**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| PATRICK BARNICLE, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>MELLANOX TECHNOLOGIES, LTD., EYAL WALDMAN, MICHAEL GRAY and JACOB SHULMAN,<br><br>Defendants. | No. 13-CV-00925 (AKH) |
| DAVID R. RYAN, JR., Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>MELLANOX TECHNOLOGIES, LTD., EYAL WALDMAN, MICHAEL GRAY and JACOB SHULMAN,<br><br>Defendants. | No. 13-CV-01047 (AKH) |
| VALENTIN PETROV, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>MELLANOX TECHNOLOGIES, LTD., EYAL WALDMAN, MICHAEL GRAY and JACOB SHULMAN,<br><br>Defendants. | No. 13-CV-01225 (AKH) |

**MEMORANDUM OF LAW IN SUPPORT OF THE MOTION BY THE MELLANOX INSTITUTIONAL INVESTOR GROUP FOR CONSOLIDATION OF RELATED ACTIONS, APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF COUNSEL**

# TABLE OF CONTENTS


I. PRELIMINARY STATEMENT ....... 1

II. STATEMENT OF FACTS ....... 2

III ARGUMENT ....... 4

A. THE RELATED ACTIONS SHOULD BE CONSOLIDATED ....... 4

B. THE MELLANOX INSTITUTIONAL INVESTOR GROUP SHOULD BE APPOINTED LEAD PLAINTIFF ....... 4

1. The Members of the Mellanox Institutional Investor Group Are Willing to Serve as Class Representatives ....... 5

2. The Mellanox Institutional Investor Group Has the "Largest Financial Interest" ....... 6

3. The Mellanox Institutional Investor Group is an Appropriate Lead Plaintiff Group ....... 7

4. The Mellanox Institutional Investor Group Otherwise Satisfies the Requirements of Rule 23 of the Federal Rules of Civil Procedure ....... 10

5. The Mellanox Institutional Investor Group Will Fairly and Adequately Represent the Interests of the Class and Is Not Subject to Unique Defenses ....... 10

C. LEAD PLAINTIFF'S SELECTION OF COUNSEL SHOULD BE APPROVED ....... 11

IV. CONCLUSION ....... 15

# TABLE OF AUTHORITIES

## Cases

*Amchem Prods., Inc. v. Windsor*,
521 U.S. 591 (1997)........................................................................................ 9

*Baby Neal v. Casey*,
43 F.3d 48 (3d Cir. 1994) ................................................................................ 8

*Bank of Am. Corp. Auction Rate Sec. Mktg. Litig.*,
2009 U.S. Dist. LEXIS 81946 (N.D. Cal. Aug. 26, 2009)................................ 13

*Beck v. Maximus, Inc.*,
457 F.3d 291 (3d Cir. 2006)........................................................................... 8, 9

*Blackmoss Invs., Inc. v. ACA Capital Holdings, Inc.*,
252 F.R.D. 188 (S.D.N.Y. 2008) ..................................................................... 4

*In re Cendant Corp. Litig.*,
264 F.3d 201(3d Cir. 2001),......................................................................... 7, 14

*In re Comverse Tech., Inc., Sec. Litig.*,,
2007 U.S. Dist. LEXIS 14878 (E.D.N.Y. Mar. 2, 2007) ................................... 6

*Danis v. USN Communs., Inc.*,
189 F.R.D. 391 (N.D. Ill. 1999)....................................................................... 8

*Dollens v. Zionts*,,
2001 U.S. Dist. LEXIS 19966 n.7 (N.D. Ill. Dec. 4, 2001) ............................. 12

*Friedman v. Quest Energy Partners LP*,
261 F.R.D. 607 (W. D. Okla. 2009)................................................................. 12

*Gluck v. Cellstar Corp.*,
976 F. Supp. 542 (N.D. Tex. 1997) .................................................................. 8

*Goldstein v. Puda Coal, Inc.*,
827 F. Supp. 2d 348 (S.D.N.Y. 2011).............................................................. 12

*Greebel v. FTP Software*,
939 F. Supp. 57 (D. Mass. 1996) ...................................................................... 8

*Lax v. First Merchants Acceptance Corp.*,
1997 WL 461036 (N.D. Ill. 1997) .................................................................... 6

*Lintz v. Agria Corp.*,,
2008 U.S. Dist. LEXIS 99846 (S.D.N.Y. Dec. 3, 2008) ................................... 4

*Meyer v. Paradigm Med. Indus.*,,
225 F.R.D. 768 (D. Utah 2004) ....................................................................... 12

*Morrison v. Nat'l Australia Bank*,
130 S. Ct. 2869 (2010),......................................................................................6

*In re Olsten Corp. Securities Litigation,*
3 F. Supp. 2d at 286 ......................................................................................6, 8

*In re Oxford Health Plans, Inc. Sec. Litig.,*
182 F.R.D. 42 (S.D.N.Y. 1998) .................................................................................. 8

*Regions Morgan Keegan Closed-End Fund Litig.,,*
2010 U.S. Dist. LEXIS 132902 (W.D. Tenn. Dec. 15, 2010) ........................................ 13

*In re Ribozyme Pharm., Inc. Sec. Litig.,*
192 F.R.D. 656 (D. Colo. 2000) ................................................................................ 12

*Riordan v. Smith Barney,*
113 F.R.D. 60 (N.D. Ill. 1986)..................................................................................... 9

*Schriver v. Impac Mortgage Holdings, Inc.,,*
2006 U.S. Dist. LEXIS 40607 (C.D. Cal. May 1, 2006) .............................................. 13

*In re Sterling Financial Corp.,*
2007 WL 4570729 (E.D. Pa. Dec. 21, 2007)............................................................ 8, 9

*Takara Trust v. Molex Inc.,*
229 F.R.D. 577 (N.D. Ill. 2005).................................................................................. 12

*In re Versata, Inc. Sec. Litig.,,*
2001 U.S. Dist. LEXIS 24270 (N.D. Cal. Aug. 20, 2001)............................................ 13

*In re Vicuron Pharm. Inc. Sec. Litig.,,*
225 F.R.D. 508 (E.D. Pa. 2004)..................................................................................... 7

**Regulations**

15 U.S.C. § 78u 4(a)(3)........................................................................................ *passim*

Fed. R. Civ. P. 23(a) ..................................................................................................... 8

Fed. R. Civ. P. 42(a) ................................................................................................ 1, 4

**Miscellaneous**

H.R. CONF. REP. 104-369, 1995 U.S.C.C.A.N. 730,
1995 WL 709276, AT *34 (Leg. Hist.) (Nov. 28, 1995)...............................................10

Harel Provident Funds and Education Funds Ltd., Harel Atidit Provident Funds Ltd., Harel Pension Fund Management Company Ltd., Israeli Shares Partnership, and Dikla Insurance Company Ltd. (collectively, "Harel"); Clal Insurance Ltd., Clal Pension and Provident Fund Ltd. and Atudot Pension Fund for Employees and Independents Ltd. (collectively, "Clal"); and, Menora Mivtachim Pension Ltd., Menora Mivtachim Insurance Ltd. and Menora Mivtachim and Histadrut Hamehandesim Management Provident Funds Ltd. (collectively, "Menora") (Harel, Clal and Menora are referred to collectively as the "Mellanox Institutional Investor Group") respectfully submit this Memorandum of Law in support of their motion, pursuant to Section 21D(a)(3) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. § 78u-4(a)(3), as amended by the Private Securities Litigation Reform Act of 1995 (the "PSLRA") and Rule 42 of the Federal Rules of Civil Procedure, for an Order: (1) consolidating all actions filed in the Southern District of New York in the above-captioned class actions for all purposes, pursuant to Fed. R. Civ. P. 42(a); (2) appointing the Mellanox Institutional Investor Group as Lead Plaintiff on behalf of all persons who purchased or otherwise acquired securities of Mellanox Technologies, Ltd. ("Mellanox") during the Class Period, pursuant to Section 21D(a)(3)(B) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. § 78u-4(a)(3)(B), as amended by the Private Securities Litigation Reform Act of 1995 (the "PSLRA"); (3) approving Lead Plaintiff's selection of Pomerantz Grossman Hufford Dahlstrom & Gross LLP ("Pomerantz") as Lead Counsel for the Class; and (4) granting such other and further relief as the Court may deem just and proper.

## I. PRELIMINARY STATEMENT

This is a federal securities class action on behalf of a class consisting of all persons other than defendants who purchased Mellanox securities between April 19, 2012 and January 2, 2013,

both dates inclusive (the "Class Period"), seeking to recover damages caused by defendants' violations of the federal securities laws and to pursue remedies under §§ 10(b) and 20(a) of the Exchange Act and Rule 10b-5 promulgated thereunder.

Pursuant to the PSLRA, the court appoints as lead plaintiff the movant who possesses the largest financial interest in the outcome of the action, and who satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I). The Mellanox Institutional Investor Group, with losses of $47,704,934 in connection with its purchases of Mellanox securities during the Class Period, has the largest financial interest in the relief sought in this action. The Mellanox Institutional Investor Group further satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure as its members are adequate representatives with claims typical of the other Class members. Accordingly, the Mellanox Institutional Investor Group respectfully submits to the Court that it should be appointed Lead Plaintiff.

## II. STATEMENT OF FACTS

Defendant Mellanox was organized under the laws of Israel in 1999 and is headquartered in Yokneam, Israel. Its common shares have been registered and trading on the NASDAQ since 2007. As a fabless semiconductor company, Mellanox produces and supplies interconnect products for computing, storage, and communication applications in the computing, Web 2.0, storage, financial services, database, and Cloud markets. It offers semiconductor interconnect products that facilitate data transmission between servers, storage systems, communications infrastructure equipment, and other embedded systems. Though it also offers Ethernet interconnect products, the Company's most lucrative product offering at the start of the Class Period was its InfiniBand product offerings. InfiniBand technology is used to transfer and store data in high-end computing and data centers.

The true facts, which were known to the Defendants but concealed from the investing public during the Class Period, were as follows:

(a) Mellanox was receiving a continuous stream of customer complaints concerning glitches in its InfiniBand product offerings during the Class Period;

(b) Mellanox knew that the pace of Intel's development of its own competing InfiniBand adaptor would both diminish Intel's demand for Mellanox's product offering and detrimentally increase competition in the InfiniBand market that Mellanox enjoyed a near monopoly;

(c) Mellanox knew that its outsized 1Q and 2Q sales growth was not sustainable and was not the result of Defendants' business acumen, growth in the InfiniBand market generally, or significant adoption by the market of Mellanox's own InfiniBand product offerings, but was instead due to short-term sales boosts attributable to Intel's rollout of the Romley CPU upgrade;

(d) Mellanox's inventory was dramatically increasing, both at the Company and in the hands of at least one significant OEM customer, which would decrease sales and profit margins going forward; and

(e) Mellanox knew its actual sales growth supported neither its own 4Q 2012 guidance nor the inflated share price targets the investment community was modeling based on Defendants' bullish Class Period statements and guidance.

As a result of defendants' false statements, Mellanox stock traded at inflated levels during the Class Period. However, after the above revelations seeped into the market, the Company's shares were hammered by massive sales, sending them down approximately ***58%*** from their Class Period high as ***more than $2.93 billion*** in market capitalization simply vanished. These price spikes and declines were Company specific and caused by defendants'

misstatements and subsequent revelations of the truth, as the S&P 500 remained relatively flat during this same period.

## III. ARGUMENT

### A. THE RELATED ACTIONS SHOULD BE CONSOLIDATED

Consolidation of related cases is appropriate, where, as here, the actions involve common questions of law and fact, and therefore consolidation would avoid unnecessary cost, delay and overlap in adjudication:

> Where actions involving a common question of law or fact are pending before the court, it may order a joint hearing or trial of any or all of the matters at issue in the actions; it may order all the actions consolidated; and it may make such order concerning proceedings therein as may tend to avoid unnecessary costs or delay.

Fed. R. Civ. P. 42(a). *See also* Manual for Complex Litigation (Third), § 20.123 (1995).

Moreover, the PSLRA also calls for consolidation where "more than one action on behalf of a class asserting substantially the same claim or claims arising under this chapter has been filed…." *Blackmoss Invs., Inc. v. ACA Capital Holdings, Inc*., 252 F.R.D. 188 (S.D.N.Y. 2008). Here, all of the related actions allege claims stemming from the Company's inflation of sales figures, failure to disclose certain extraordinary transactions, lack of adequate internal and financial controls and other such misconduct. Accordingly, consolidation of the related actions is appropriate. *Lintz v. Agria Corp*., 2008 U.S. Dist. LEXIS 99846 (S.D.N.Y. Dec. 3, 2008) (consolidating actions that all alleged federal securities law violations arising out of defendants' alleged issuance of false and misleading financial statements).

### B. THE MELLANOX INSTITUTIONAL INVESTOR GROUP SHOULD BE APPOINTED LEAD PLAINTIFF

Section 21D(a)(3)(B) of the PSLRA sets forth procedures for the selection of Lead Plaintiff in class actions brought under the Exchange Act. The PSLRA directs courts to consider

any motion to serve as Lead Plaintiff filed by class members in response to a published notice of class action by the later of (i) 90 days after the date of publication, or (ii) as soon as practicable after the Court decides any pending motion to consolidate. 15 U.S.C. § 78u-4(a)(3)(B)(i) &(ii).

Further, under 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I), the Court is directed to consider all motions by plaintiffs, or purported class members, to appoint a lead plaintiff, filed in response to any such notice. Under this section, the Court "shall" appoint "the presumptively most adequate plaintiff" to serve as lead plaintiff and shall presume that plaintiff is the person or group of persons, that:

> (aa) has either filed the complaint or made a motion in response to a notice . . .;
>
> (bb) in the determination of the Court, has the largest financial interest in the relief sought by the class; and
>
> (cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).

As set forth below, the Mellanox Institutional Investor Group satisfies all three of these criteria and thus is entitled to the presumption that it is the most adequate plaintiff of the Class and, therefore, should be appointed Lead Plaintiff for the Class.

**1. The Members of the Mellanox Institutional Investor Group Are Willing to Serve as Class Representatives**

On February 7, 2013, counsel in the first filed action caused a notice to be published over *Globe Newswire* pursuant to Section 21D(a)(3)(A)(i) of the PSLRA, which announced that a securities class action had been filed against the defendants herein, and advised investors of Mellanox securities that they had until April 8, 2013, to file a motion to be appointed as Lead Plaintiff. *See* Mellanox Investor Notice, Ex. A.

The Mellanox Institutional Investor Group has filed the instant motion pursuant to the Notice, and has attached certifications attesting that its members are willing to serve as class representatives for the Class and provide testimony at deposition and trial, if necessary. *See* Mellanox Institutional Investor Group Certifications, Ex. B. Accordingly, the Mellanox Institutional Investor Group satisfies the first requirement to serve as Lead Plaintiff for the Class.

**2. The Mellanox Institutional Investor Group Has the "Largest Financial Interest"**

The PSLRA requires a court to adopt a rebuttable presumption that "the most adequate plaintiff . . . is the person or group of persons that . . . has the largest financial interest in the relief sought by the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii).

As of the time of the filing of this motion, the Mellanox Institutional Investor Group believes that it has the largest financial interest of any of the Lead Plaintiff movants based on the four factors articulated in the seminal case *Lax v. First Merchants Acceptance Corp.*, 1997 WL 461036, at *5 (N.D. Ill. 1997) (financial interest may be determined by (1) the number of shares purchased during the class period; (2) the number of net shares purchased during the class period; (3) the total net funds expended during the class period; and (4) the approximate losses suffered) (the "Lax-Olsten" factors).[1] As demonstrated in the chart below, the Mellanox Institutional Investor Group has the largest financial interest under each of these factors for the securities it purchased on the NASDAQ[2]:

[1] *See also In re Olsten Corp. Sec. Litig.*, 3 F. Supp.2d 286, 296 (E.D.N.Y. 1998). *Accord In re Comverse Tech., Inc., Sec. Litig.*, 2007 U.S. Dist. LEXIS 14878, at *22-*25 (E.D.N.Y. Mar. 2, 2007).

[2] During the Class Period, Mellanox also traded on the Tel Aviv Stock Exchange ("TASE"). Each of the members of the Mellanox Institutional Investor Group also suffered substantial losses on their TASE investments. Nevertheless, in light of the Supreme Court's decision in *Morrison v. Nat'l Australia Bank*, 130 S. Ct. 2869 (2010), Movants deem it appropriate at this stage to only assert losses for purposes of determining a Lead Plaintiffs' financial interests for those transactions occurring on a United States exchange.

| Movant | Shares Purchased | Amount Expended | Retained Shares | Loss |
|---|---|---|---|---|
| **Harel** | **771,953** | **$62,485,959** | **755,053** | **$20,960,705** |
| **Clal** | **1,123,697** | **$86,505,124** | **1,018,807** | **$21,014,254** |
| **Menora** | **457,296** | **$30,902,468** | **418,156** | **$5,729,975** |
| **Total** | **2,352,976** | **$179,893,551** | **2,192,016** | **$47,704,934** |

The above chart demonstrates that the Mellanox Institutional Investor Group suffered losses of $47,704,934 as a result of the alleged fraud. *See* Mellanox Institutional Investor Group Loss Chart, Ex. C. Because the Mellanox Institutional Investor Group possesses the largest financial interest in the outcome of this litigation, it may be presumed to be the "most adequate" plaintiff. *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(bb); *see also In re Vicuron Pharm. Inc. Sec. Litig.*, 225 F.R.D. 508, 511 (E.D. Pa. 2004) (recognizing that the financial loss is the most significant of these elements).

**3. The Mellanox Institutional Investor Group Otherwise Satisfies the Requirements of Rule 23 of the Federal Rules of Civil Procedure**

Section 21D(a)(3)(B)(iii)(I)(cc) of the PSLRA further provides that, in addition to possessing the largest financial interest in the outcome of the litigation, Lead Plaintiff must "otherwise satisfy the requirements of Rule 23 of the Federal Rules of Civil Procedure." *See In re Cendant Corp. Litig.*, 264 F.3d 201, 263 (3d Cir. 2001), *cert. denied*, 535 U.S. 929 (2002). Rule 23(a) generally provides that a class action may proceed if the following four requirements are satisfied:

> (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

In making its determination that Lead Plaintiff satisfies the requirements of Rule 23, the Court need not raise its inquiry to the level required in ruling on a motion for class certification;

instead a *prima facie* showing that the movant satisfies the requirements of Rule 23 is sufficient. *Greebel v. FTP Software*, 939 F. Supp. 57, 60 (D. Mass. 1996). Moreover, "typicality and adequacy of representation are the only provisions relevant to a determination of lead plaintiff under the PSLRA." *In re Oxford Health Plans, Inc. Sec. Litig.*, 182 F.R.D. 42, 49 (S.D.N.Y. 1998) (citing *Gluck v. Cellstar Corp.*, 976 F. Supp. 542, 546 (N.D. Tex. 1997); *Olsten.*, 3 F. Supp. 2d at 296.

The typicality requirement of Fed. R. Civ. P. 23(a)(3) is satisfied where the named representative's claims have the "same essential characteristics as the claims of the class at large." *Danis v. USN Communs., Inc.*, 189 F.R.D. 391, 395 (N.D. Ill. 1999). *See In re Sterling Financial Corp.*, 2007 WL 4570729, at *4 (E.D. Pa. Dec. 21, 2007) (noting that the "typicality requirement is satisfied if the plaintiff, as a result of the same course of conduct, suffered the injuries as the absent class members, and their claims are based on the same legal issues."). In other words, "the named plaintiffs' claims [must be] typical, in common-sense terms, of the class, thus suggesting that the incentives of the plaintiffs are aligned with those of the class." *Beck v. Maximus, Inc.*, 457 F.3d 291, 295-96 (3d Cir. 2006) (quoting *Baby Neal v. Casey*, 43 F.3d 48, 55 (3d Cir. 1994) (noting that "factual differences will not render a claim atypical if the claim arises from the same event or practice or course of conduct that gives rise to the claims of the class members, and if it is based on the same legal theory.")).

The claims of the Mellanox Institutional Investor Group are typical of those of the Class. The group alleges, as do all class members, that defendants violated the Exchange Act by making what they knew or should have known were false or misleading statements of material facts concerning Mellanox, or omitted to state material facts necessary to make the statements they did make not misleading. The Mellanox Institutional Investor Group, as did all members of

the Class, purchased Mellanox securities during the Class Period at prices artificially inflated by defendants' misrepresentations or omissions and were damaged upon the disclosure of those misrepresentations and/or omissions. These shared claims, which are based on the same legal theory and arise from the same events and course of conduct as the Class claims, satisfy the typicality requirement of Rule 23(a)(3).

The adequacy of representation requirement of Rule 23(a)(4) is satisfied where it is established that a representative party "will fairly and adequately protect the interests of the class." The class representative must also have "sufficient interest in the outcome of the case to ensure vigorous advocacy." *Riordan v. Smith Barney*, 113 F.R.D. 60, 64 (N.D. Ill. 1986). *See Sterling*, 2007 WL 4570729, at *4 (highlighting that the adequacy requirement is satisfied when "both the class representative and its attorneys are capable of satisfying their obligations, and neither has interests conflicting with those of the other class members."); *Beck*, 457 F.3d at 296 (emphasizing that the adequacy inquiry "serves to uncover conflicts of interest between named parties and the class they seek to represent," (quoting *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625 (1997)).

The members of the Mellanox Institutional Investor Group adequately represent the Class. There is no antagonism between the Mellanox Institutional Investor Group's interests and those of the Class and its losses demonstrate that the Mellanox Institutional Investor Group has a sufficient interest in the outcome of this litigation. Moreover, the Mellanox Institutional Investor Group has retained counsel highly experienced in vigorously and efficiently prosecuting securities class actions such as this action, and submit his choice to the Court for approval pursuant to 15 U.S.C. § 78u-4(a)(3)(B)(v).

**4. The Mellanox Institutional Investor Group Will Fairly and Adequately Represent the Interests of the Class and Is Not Subject to Any Unique Defenses**

The presumption in favor of appointing the Mellanox Institutional Investor Group as Lead Plaintiff may be rebutted only upon proof "by a purported member of the plaintiffs' class" that the presumptively most adequate plaintiff:

> (aa) will not fairly and adequately protect the interest of the class; or
>
> (bb) is subject to unique defenses that render such plaintiff incapable of adequately representing the class.

15 U.S.C. § 78u-4(a)(3)(b)(iii)(I).

The Mellanox Institutional Investor Group's ability and desire to fairly and adequately represent the Class have been discussed above. The Mellanox Institutional Investor Group is not aware of any unique defenses defendants could raise that would render it inadequate to represent the Class. Accordingly, the Mellanox Institutional Investor Group should be appointed Lead Plaintiff for the Class.

Indeed, the appointment of the Mellanox Institutional Investor Group would also meet one of the primary legislative goals in enacting the PSLRA – namely, to encourage sophisticated institutional investors with large financial holdings to serve as Lead Plaintiffs in securities class actions. H.R. CONF. REP. 104-369, 1995 U.S.C.C.A.N. 730, 1995 WL 709276, AT *34 (Leg. Hist.) (Nov. 28, 1995) ("The Conference Committee believes that increasing the role of institutional investors in class actions will ultimately benefit shareholders and assist courts by improving the quality of representations in securities class actions."). Here, each of the members of the Mellanox Institutional Investor Group is a sophisticated institutional investor with large financial holdings, who are uniquely suited to zealously promoting the rights of the Class.

Indeed, each of the Harel entities are subsidiaries of Harel Insurance Investments & Financial Services, Ltd., an insurance and financial services conglomerate with approximately $30 billion in investments under management. Harel is the beneficial owner of the securities identified in its Certifications. Hanan Friedman, the General Counsel of Harel Insurance Investments & Financial Services, Ltd., signed the Certifications on Harel's behalf, and is authorized to bind Harel to this litigation.

Similarly, each of the Clal entities are subsidiaries of Clal Insurance Enterprise Holdings Ltd., an insurance and financial services conglomerate with approximately $45 billion in investments under management. Clal is the beneficial owner of the securities identified in its Certifications. Nir Moroz, the CEO of Clal Insurance Ltd., Clal Pension and Provident Fund Ltd. and Atudot Pension Fund for Employees and Independents Ltd. signed the Certifications on these entities behalf, and is authorized to bind Clal to this litigation.

Likewise, each of the Menora entities are subsidiaries of Menorah Mivtachim Holdings Ltd., an insurance and financial services conglomerate with approximately $15 billion in investments under management. Menora is the beneficial owner of the securities identified in its Certifications. Yoni Tal, the Chief Investment Officer of Menora Mivtachim Holdings Ltd. and its subsidiaries, Shai Koupel, the Chief Financial Officer of Menora Mivtachim and Histadrut Management Provident Funds and Menora Mivtachim Insurance Ltd., and Israel Ezra, Senior Deputy Chief Executive and Head of the Finance Division of Menora Mivtachim Pensions Ltd. signed the Certifications on these entities behalf, and are authorized to bind Menora to this litigation.

**5. The Mellanox Institutional Investor Group is an Appropriate Lead Plaintiff Group**

The appointment of a group of class members as Lead Plaintiff is expressly permitted by the PSLRA, as courts in this District and the majority of courts throughout the country have

recognized. *Friedman v. Quest Energy Partners LP*, 261 F.R.D. 607, 614-615 (W. D. Okla. 2009) (agreeing that the PSRLA "allows for a group of persons to serve as lead plaintiff"); *Takara Trust v. Molex Inc.*, 229 F.R.D. 577, 579 (N.D. Ill. 2005) (holding that the PSLRA permits appointment of a "person or group of persons" and appointing a group with the largest financial interest as lead plaintiff); *Dollens v. Zionts*, 2001 U.S. Dist. LEXIS 19966, at *18 n.7 (N.D. Ill. Dec. 4, 2001) (explaining that appointment of a lead plaintiff group is appropriate under the PSLRA provided that the group will "fairly and adequately protect the interests of the class."). Thus, a "member or members" of the class or a "person or persons" may combine to constitute the "largest financial interest" and thereby jointly serve as the most adequate plaintiff so long as they represent the largest financial interest. U.S.C. § 78u-4(a)(3)(B)(I). *See Meyer v. Paradigm Med. Indus.*, 225 F.R.D. 768, 681 (D. Utah 2004) (quoting *In re Ribozyme Pharm., Inc. Sec. Litig.*, 192 F.R.D. 656, 659 (D. Colo. 2000)).

Here, the Mellanox Institutional Investor Group is an appropriate group: the group is small, cohesive, consisting of only three member parent companies, Harel, Clal and Menora, which share an interest and ability to prosecute the claims of fellow Class Members. Accordingly, this group of three sophisticated institutional investors, with the largest financial interests in this action are properly aggregated for purposes of this motion.

In addition, the Mellanox Institutional Investor Group has submitted a Joint Declaration demonstrating that each member is knowledgeable about this litigation, actively working together for the benefit of the Class, and committed to protecting the interests of the class. *See* Joint Declaration of Harel, Clal and Menora in Support of Their Motion for Appointment as Lead Plaintiff and Approval of Lead Counsel ("Joint Decl."), attached hereto as Exhibit D. *Goldstein v. Puda Coal, Inc.*, 827 F. Supp. 2d 348, 356 (S.D.N.Y. 2011) (appointing group that

submitted joint declaration describing: "why the individual members chose to work as a group; how the group intends to function collectively, including how they plan to communicate; the protocol the group will use to address disagreements; background information regarding individual members of the group; and the members' willingness to accept the role and responsibilities of lead plaintiff."); *Regions Morgan Keegan Closed-End Fund Litig.*, 2010 U.S. Dist. LEXIS 132902, at *42 (W.D. Tenn. Dec. 15, 2010) (considering joint declaration and appointing group); *Schriver v. Impac Mortgage Holdings, Inc.*, 2006 U.S. Dist. LEXIS 40607, at *30 n.11, *33 (C.D. Cal. May 1, 2006) (appointing a group who submitted such a joint declaration); *Bank of Am. Corp. Auction Rate Sec. Mktg. Litig.*, 2009 U.S. Dist. LEXIS 81946, at *9 (N.D. Cal. Aug. 26, 2009) (noting movants demonstrated their adequacy to serve as lead plaintiffs by submitting "declarations attesting that they will work together to monitor the litigation and to ensure that the litigation is efficiently prosecuted."); *In re Versata, Inc. Sec. Litig.*, 2001 U.S. Dist. LEXIS 24270, at *22 (N.D. Cal. Aug. 20, 2001) (appointing group that submitted declaration stating why each member "is seeking lead plaintiff status as part of the asserted group.").

The Joint Declaration evidences the Mellanox Institutional Investor Group's desire and ability to work together to oversee the litigation on behalf and for the benefit of the Class. Specifically, they "have discussed the requirements and responsibilities of being a Lead Plaintiff" with their counsel. Joint Decl. ¶ 2. They understand that it is "the Lead Plaintiff's responsibility to keep informed regarding the status and progress of this action, the strengths and weaknesses of the case, and any prospects for resolution of this matter. *Id.* They "further understand that as Lead Plaintiff, "we will have responsibility for making important litigation decisions and directing counsel with respect to this litigation, after receiving the benefit of

counsel's advice." Joint Decl. ¶ 6. They "are aware that al Lead Plaintiff has a fiduciary duty to the entire Class, which we each intend to represent fully and faithfully in order to protect its interests" and "that to fulfill our fiduciary duties and obligations as Lead Plaintiff, we must fairly and adequately represent the Class by vigorously prosecuting this case on its behalf." Joint Decl. ¶ 7. They "intend to communicate with our counsel – and with each other separately from our attorneys – as often as necessary to ensure the vigorous and efficient prosecution of this case, to discuss the progress of the litigation and the litigation strategies recommended by our counsel." After consulting with their counsel, they "agreed to proceed together because we each other suffered losses in our investments in Mellanox, Inc. and would like the opportunity to participate in this action as Lead Plaintiff." Joint Decl. ¶ 10. Further, they "agreed to jointly prosecute the case together as Lead Plaintiff to ensure the best representation of the Class," and that the case is prosecuted as efficiently and expeditiously as possible. *Id*.

### C. LEAD PLAINTIFF'S SELECTION OF COUNSEL SHOULD BE APPROVED

The PSLRA vests authority in the Lead Plaintiff to select and retain lead counsel, subject to the approval of the Court. 15 U.S.C. § 78u-4(a)(3)(B)(v). The Court should interfere with Lead Plaintiff's selection only when necessary "to protect the interests of the class." 15 U.S.C.§ 78u-4(a)(3)(B)(iii)(II)(aa). *See Cendant*, 264 F.3d at 276 (emphasizing that the PSLRA "evidences a strong presumption in favor of approving a properly-selected lead plaintiff's decisions as to counsel selection and counsel retention.").

Here, the Mellanox Institutional Investor Group has selected Pomerantz as Lead Counsel. Pomerantz is highly experienced in the area of securities litigation and class actions, and has successfully prosecuted numerous securities litigations and securities fraud class actions on behalf of investors as detailed in the firm's resumes. *See* Pomerantz Firm Resume, Exhibit E.

As a result of each firm's extensive experience in litigation involving issues similar to those raised in this action, the Mellanox Institutional Investor Group's counsel have the skill and knowledge which will enable them to prosecute this action effectively and expeditiously. Thus, the Court may be assured that by approving the Mellanox Institutional Investor Group's selection of Counsel, the members of the class will receive the best legal representation available.

## IV. CONCLUSION

For the foregoing reasons, the Mellanox Institutional Investor Group respectfully requests the Court to issue an Order: (1) consolidating all related actions; (2) appointing the Mellanox Institutional Investor Group as Lead Plaintiff; (3) approving Pomerantz as Lead Counsel and (4) granting such other relief as the Court may deem to be just and proper.

Dated: April 8, 2013

**POMERANTZ GROSSMAN HUFFORD DAHLSTROM & GROSS LLP**

*/s/* Jeremy A. Lieberman
Marc I. Gross
Jeremy A. Lieberman
Lesley F. Portnoy
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone: 212-661-1100
Facsimile: 212-661-8665

**POMERANTZ GROSSMAN HUFFORD DAHLSTROM & GROSS LLP**
Patrick V. Dahlstrom
100 South LaSalle Street, Suite 3505
Chicago, IL 60603
Telephone: 312-377-1181
Facsimile: 312-377-1184

*Counsel for Movants and Proposed Lead Counsel for the Class*