UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re MELLANOX TECHNOLOGIES, LTD. SECURITIES LITIGATION | Case No. 13-cv-04909-JD<br><br>**ORDER GRANTING MOTION TO DISMISS**<br><br>Re: Dkt. No. 102 |

In this securities fraud action, defendants have moved to dismiss plaintiffs' second amended complaint for failure to state a claim. Dkt. No. 102. The Court previously dismissed plaintiff's amended complaint for failure to plead materiality, falsity and scienter to the standards required by the Private Securities Litigation Reform Act of 1995 ("PSLRA"), 15 U.S.C. § 78u-4. Dkt. No. 94.

At the hearing on defendants' present motion, plaintiffs acknowledged that the third iteration of their complaint is similar in many ways to the prior version that the Court dismissed. And for the reasons stated below, those aspects of the third amended complaint which are new are insufficient to propel this case over the pleading bar set by the PSLRA. Plaintiffs have candidly admitted that they would not have much else to add even if they were to be given another chance to amend. The Court consequently dismisses the case with prejudice.

## BACKGROUND

The relevant factual background is well known to the parties and was discussed in depth in the Court's prior order (Dkt. No. 94), and the Court will not repeat it here. In brief, plaintiffs allege that Mellanox Technologies, Ltd. and three of its current and former executives -- Eyal Waldman, Michael Gray and Jacob Shulman -- made a number of materially false or misleading

statements between April 19, 2012 and January 2, 2013 about the company's prominence in the interconnect market and its prospects for future growth and revenue generation.[1] On January 3, 2013, Mellanox announced in its 4Q earnings call that it had failed to meet its projected revenue for that quarter, marking its first "revenue miss" since the company went public five years prior. Plaintiffs assert, based on the allegedly false or misleading statements, that defendants have violated Sections 10(b) and 20(a) of the Securities Exchange Act of 1934, 15 U.S.C. §§ 78j(b), 78t(a), 78(t)-1; Rule 10b-5 promulgated thereunder by the Securities Exchange Commission, 17 C.F.R. § 240.10b-5; and the Israel Securities Law, 1968.

Finding that the amended complaint was "unclear as to which of Defendants' representations are alleged to support Plaintiffs' claims, and which are included solely to provide background information," Dkt. No. 94 at 32 n.10, the Court previously closely analyzed each statement alleged in the amended complaint. It concluded that many of the statements alleged by plaintiffs were either non-actionable corporate puffery or were protected by the PSLRA's safe harbor (which applies to forward-looking statements that are accompanied by meaningful cautionary language), and that plaintiffs had not adequately alleged the required falsity for any statement. The Court further concluded that plaintiffs' failure to adequately plead scienter constituted an alternative ground for dismissing the entire amended complaint.

This is the backdrop against which the Court now considers plaintiffs' second amended complaint and defendants' motion to dismiss it. Finding, among other things, that the second amended complaint again does not clearly delineate which statements are being alleged as background and which are actually being targeted as the basis for liability, the Court directed plaintiffs to prepare a chart that specifically identifies: (1) each statement alleged to have been false or misleading, (2) the reason(s) the statement was false or misleading when made, and (3) if an allegation regarding the statement or omission is made on information and belief, all facts on which the belief is formed. Dkt. No. 111. Plaintiffs prepared a chart identifying twelve separate

---

[1] For context, plaintiffs explain that Mellanox's "flagship" product is its "InfiniBand 56 Gb/sec product," which is a "hardware interconnection tool that allows stacks of databases, servers, and computers to 'talk' to one another." Dkt. No. 101 ¶ 2.

1   statements and brought the chart to the motion hearing, where it became the basis for the Court's
2   discussion with the parties.  Plaintiffs have filed that chart on the case docket as Dkt. No. 113,
3   Ex. A, and in this order, the Court refers to the allegedly false statements by the number they are
4   given in that chart.

## DISCUSSION

As a preliminary matter, plaintiffs' counsel forthrightly acknowledged at the hearing that many of the twelve statements alleged by plaintiffs in the second amended complaint are "similar" or "close" to statements the Court previously dismissed.  Plaintiffs' counsel also explained that the "reasons why [the] statements were false and misleading" were the same for all twelve statements, with the exception that for Statements 6 through 12, there was an additional allegation regarding an "admission" by Waldman on January 17, 2013 regarding a "cable issue."  *See* Dkt. No. 113, Ex. A.  The Court finds that falsity still has not been adequately pled for any of the twelve statements.

### I.   STATEMENT NO. 1

The statements identified by plaintiffs as "Statement No. 1" are identical, word for word, with statements already addressed and dismissed by the Court in its prior order.  *Compare* Dkt. No. 113, Ex. A at 1 *with* Dkt. No. 94 at 23-24.  The Court previously concluded that the amended complaint "does not allege facts to suggest that Waldman's statements were false when made."  Dkt. No. 94 at 25.  Plaintiffs' counsel acknowledged at the hearing that there was nothing new about Statement No. 1.  This alone is sufficient for dismissal.

But even if the Court were to consider the facts listed in plaintiffs' chart as the reasons why Waldman's statements were allegedly false or misleading -- *i.e.*, problems in the company's sales to Apple, delays in delivering cable orders to customers and the anticipated effects of a looming federal sequestration, Dkt. No. 113, Ex. A at 1 -- those alleged facts have nothing at all to do with Waldman's statements about the continued deployment of supercomputers and the company's current "large deals."  As before, the second amended complaint does not sufficiently plead any "reason or reasons why the [alleged] statement is misleading."  15 U.S.C. § 78u-4(b)(1). Statement No. 1 is dismissed.

## II. STATEMENT NO. 2

Plaintiffs' "Statement No. 2" is comprised of two parts. *See* Dkt. No. 113, Ex. A at 3. The first includes Waldman's statements about customers who "are growing," customers' usage of the company's products which is "just growing," and the "growing" number of applications and datacenters which are being deployed. *Id*. These statements are indistinguishable from the types of comments previously dismissed as non-actionable, corporate puffery, *see* Dkt. No. 94 at 11-17, and they are dismissed again on that basis.

The second half of Statement No. 2 is Waldman's statement about expected continued deployment "in the coming quarters." Dkt. No. 113, Ex. A at 3. The problem for plaintiffs, however, is that this exact statement was already found to be a forward-looking statement that is protected by the PSLRA's safe harbor. Dkt. No. 94 at 22 (second bullet point). Indeed, plaintiffs acknowledge as much and state that they are "preserv[ing] them for appeal." Dkt. No. 107 at 14 n.11. The Court declines to revisit this ruling, and dismisses Statement No. 2 in its entirety.

## III. STATEMENT NO. 3

The great majority of Statement No. 3 is also non-actionable, corporate puffery of the type already dismissed. *Compare* Dkt. No. 113, Ex. A at 5 ("We've seen . . . greater traction"; "just a continuation of more HPC business and greater traction in non-HPC end markets that we're going after") *with* Dkt. No. 94 at 14 ("Waldman and Gray's assertions that Mellanox's products have 'continue[d] to gain traction in the marketplace' . . . constitute non-actionable, vague, unspecific assertions of corporate optimism.").

Statement No. 3 also contains Gray's statement that, "I think there's been more business, not necessarily with those same five to six HPC accounts that we called out." Dkt. No. 113, Ex. A. But among other problems, nothing in the column to the right of that statement -- nor any of plaintiffs' counsel's arguments at the hearing -- shed any light on why this statement by Gray was false or misleading in any way. Statement No. 3 is dismissed.

## IV. STATEMENT NO. 4

The first part of Statement No. 4 is Gray's statement that "as you move to higher bandwidth solutions, the reliability of the cables are [sic] absolutely critical." Dkt. No. 113, Ex. A

4

at 6. But this is a statement of Gray's unsurprising, personal belief that cable quality is important. Plaintiffs have not pled facts that would establish either that this statement was misleading or material.

With respect to the second half of Statement No. 4 as well, plaintiffs have not sufficiently pled falsity for the statements "we can drive a higher top line revenue, a higher bottom line revenue by selling cables" and "we've had quarters where our cable business can be anywhere to 15% of our revenues." Dkt. No. 113, Ex. A at 6. Plaintiffs state no facts establishing that these statements were literally false, nor does that appear to be their argument. Rather, they appear to take issue with the fact that Gray did not go on to volunteer all of the company's problems and issues with cables that plaintiffs have alleged in their second amended complaint. But as is beyond dispute, "Section 10(b) and Rule 10b-5(b) do not create an affirmative duty to disclose any and all material information." Dkt. No. 94 at 27-28. Disclosure is required only when necessary "to make . . . statements made, in the light of the circumstances under which they were made, not misleading." *Matrixx Initiatives, Inc. v. Siracusano*, 131 S. Ct. 1309, 1321 (2011) (quoting 17 C.F.R. § 240.10b-5(b)). The statements labelled as Statement No. 4 do not meet that bar, and they are dismissed.

## V.   STATEMENT NO. 5

Statement No. 5 again consists of non-actionable, corporate puffery. *See* Dkt. No. 113, Ex. A at 7 ("We continue to soar"; "I'm sure we'll get there"; "we will continue to grow"; "[w]e intend to increase our market share to 30% and more"). The statement is dismissed pursuant to the Court's prior analysis of similar statements. *See* Dkt. No. 94 at 11-17.

## VI.   STATEMENT NO. 6

Statement No. 6 has three sub-parts, the latter two of which were already dismissed by the Court's prior order. *See* Dkt. No. 94 at 17, 22-23. Those are again dismissed.

For the first part as well, *i.e.*, Waldman's statement that "[w]e're actually now seeing $150 million as baseline," plaintiffs continue to lack the critical element of falsity. Though plaintiffs point to alleged problems in sales to Apple, a "cable issue" that took "weeks" to detect and a "few more weeks" to fix, delays in shipping cables, and the possible effects of a looming federal

sequestration, *see* Dkt. No. 113, Ex. A at 9-10, plaintiffs simply fail to connect the dots to show why the failure to disclose those alleged facts made what *was* said by Waldman misleading. When there is no such connection, there is no affirmative duty to disclose.

## VII. STATEMENT NOS. 7 & 8

Statement Nos. 7 and 8, in addition to containing language that can only be characterized as puffery ("we look forward toward 2013 and we expect to grow further"), are also another instance of plaintiffs re-alleging forward-looking statements that have already been deemed to fall under the protection of the PSLRA's safe harbor. *See* Dkt. No. 107 at 14 n.11 (acknowledging same). They are dismissed.

## VIII. STATEMENT NO. 9

Statement No. 9, like Statement No. 4 above, is a statement of Waldman's belief in the importance of cables. *See* Dkt. No.113, Ex. A at 15 ("if your cable is not good enough the performance will not be there"; "companies are becoming customers of Mellanox just buying cables. And it's an important thing."). It is similarly not actionable.

It is not the case that any mention of the word "cable" automatically triggers a duty on defendants' part to disclose any and all potential problems the company may have been experiencing that related to cables. Putting aside the question of whether defendants even knew about these alleged problems at the time of their statements (as well as whether the alleged problems themselves are pled with sufficient detail), there simply is no affirmative duty under the case law to disclose any and all material information. *Matrixx*, 131 S. Ct. at 1321. The duty to disclose is triggered only if and when defendants make a statement that would be rendered false or misleading because of the alleged omission. Like the other statements, Statement No. 9 is not such a statement.

## IX. STATEMENT NO. 10

Statement No. 10 is Shulman's November 27, 2012 statement which is largely about past facts: "So excluding those unique large deals, our baseline business increased from $80 million in Q1 to $100 million in Q2, to approximately $130 million in Q3, to approximately $145 million to $150 million in Q4. When we guided Q4, we said that we don't expect to have any big unique

deals in the Q4 of 2012." Dkt. No. 113, Ex. A at 17. Plaintiffs have not identified facts that show that Mellanox's baseline business did not increase over the quarters as Shulman represented, or that the company did not say that it did not expect to have any "big unique deals" in Q4 at the time it provided guidance for that quarter. Regarding the projected $145 to $150 million for Q4, which the company ultimately missed, the alleged facts identified in the fourth column of plaintiffs' chart again cannot be said to render the statement identified in the third column as false or misleading. Plaintiffs have not pled with particularity facts to suggest that "(1) the statement [was] not actually believed, (2) there [was] no reasonable basis for the belief, or (3) the speaker [was] aware of undisclosed facts tending seriously to undermine the statement's accuracy." *Kaplan v. Rose*, 49 F.3d 1363, 1375 (9th Cir. 1994).

## X.   STATEMENT NO. 11

Statement No. 11 is dismissed for the same reasons as Statement No. 10, with the additional point that Statement No. 11 also appears to contain non-actionable puffery, *e.g.*, "we see nice penetration of our FDR products" and "it's a very, very nice growth of our FDR products within that market." Dkt. No. 113, Ex. A at 19.

## XI.   STATEMENT NO. 12

Finally, Statement No. 12 consists entirely of statements that are cut from the same cloth as those already found to be mere puffery. The statements, which were made by Waldman, include that Mellanox "can still demonstrate growth," Mellanox's technology "sets it apart from its competitors," and the company "has the best interconnect technology" and "will take market share in the future." Dkt. No. 113, Ex. A at 21. As the Court previously explained, these kinds of "vague, unspecific assertions of corporate optimism may not serve as the basis for a misrepresentation claim under the federal securities laws, because the statements are incapable of objective measurement and are the type of hopeful, nebulous statements that reasonable investors have come to expect from high-ranking company executives." Dkt. No. 94 at 16.

## CONCLUSION

Because plaintiffs have not adequately alleged falsity, the Court finds it unnecessary to reach -- and does not reach -- the issue of scienter. *See* Dkt. No. 94 at 29. This deficiency

7

1 supports the dismissal of plaintiffs' claims under Section 10(b) and Rule 10b-5. Without a
2 primary violation under Section 10(b), the claim under Section 20(a) for "control person liability"
3 similarly fails. Plaintiffs themselves allege that liability under the Israel Securities Law is
4 "pursuant to Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder," Dkt.
5 No. 101 ¶ 175, so that claim, too, falls away.

Generally, when the Court dismisses a complaint, it "should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (internal quotation marks and citation omitted). Here, however, at the hearing, plaintiffs candidly admitted that even if the Court were to permit another amendment, plaintiffs would not have additional facts that would merit that. The Court also notes that plaintiffs have already made three attempts at stating a claim that could pass muster under the PSLRA.

Consequently, because plaintiffs have failed to satisfy the pleading requirements under the PSLRA, the Court grants defendants' motion to dismiss the second amended complaint. Furthermore, based on plaintiffs' representation that they are not presently aware of additional facts they could plead, the dismissal is without leave to amend.

The Clerk of the Court is directed to close the case.

**IT IS SO ORDERED**.

Dated: December 17, 2014

_____
JAMES DONATO
United States District Judge